Fred J. DiDOMENICO, Plaintiff,

v.

EMPLOYERS COOPERATIVE INDUS-TRY TRUST a/k/a Employers' Cooperative Industry Employee Benefit Trust, Defendant.

Civ. No. F 87–322.

United States District Court, N.D. Indiana, Fort Wayne Division.

Nov. 24, 1987.

**904**

Alan VerPlanck, James P. Fenton, Barrett & McNagny, Fort Wayne, Ind., for plaintiff.

Richard H. Riegner, Ronald J. Waicukauski, White & Robb, Indianapolis, Ind., for defendant.

### ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on plaintiff's November 23, 1987 motion for a preliminary injunction. On that same date, plaintiff filed suit against defendant seeking to prevent defendant from denying coverage under a Group Health Plan maintained by his employer as a Welfare Benefits Plan pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.* A hearing was held on the request for a preliminary injunction on November 24, 1987. For the reasons set forth below, plaintiff's motion for a preliminary injunction will be granted.

### Discussion

Plaintiff, Frederick J. DiDomenico, has been employed as a production supervisor at Wayne Chemical in Fort Wayne, Indiana for the past 11 years. Defendant, Employers Cooperative Industry Trust (hereinafter ECIT), also known as Employers' Cooperative Industry Employee Benefit Trust, is an Employee Welfare Benefit Plan Trust.

As an employee of Wayne Chemical, plaintiff is a participant in and a beneficiary of an Employee Welfare Benefit Plan administered by the defendant. The terms of the Plan are set forth in the Plan itself and in a booklet provided to the employees. (Plaintiff Ex. 2; Defendant Ex. B).

Approximately seven or eight years ago, plaintiff was diagnosed as having biliary cirrhosis of the liver after chemical testing and a biopsy indicated that plaintiff's liver was diseased. The cause of plaintiff's condition is unknown.

Since the condition was first diagnosed, plaintiff's primary physician for his liver ailment has been Dr. Martin J. Kaplan. Dr. Kaplan graduated from the Indiana University School of Medicine in 1969. Af-

ter a term in the Army, Dr. Kaplan was employed at the University of Illinois and specialized in internal medicine. For the past 10 years, Dr. Kaplan has been engaged in private practice in Fort Wayne, Indiana, specializing in gastroenterology.

Approximately one year ago, Dr. Kaplan discussed with plaintiff the possibility of a liver transplant, among other modes of possible treatment. In February of 1987, after plaintiff suffered internal bleeding, Dr. Kaplan was of the view that a liver transplant was indeed necessary. Plaintiff testified that after the hemorrhaging in February of this year, he has not felt well and has no energy.

Because of his deteriorating condition, Dr. Kaplan advised plaintiff to contact one of several institutions about the possibility of a liver transplant. It is Dr. Kaplan's belief that plaintiff would make an "ideal" candidate for such a transplant.

On his doctor's advice, plaintiff was seen at the University of Chicago in March or April, 1987. He was found to be an acceptable candidate for a liver transplant and in fact was scheduled to receive a transplant in August or September, but declined to undergo the operation at that time because there was another younger patient in more critical need. At this time, plaintiff is scheduled to undergo a liver transplant as soon as a suitable donor organ becomes available.

In a declaration filed in this court as plaintiff's Exhibit 5, Dr. Christoph E. Broelsch, a professor of surgery at the University of Chicago, wrote about the immediacy of plaintiff's situation as follows:

2. Mr. Fred J. DiDomenico is one of my patients and he suffers from biliary cirrhosis of the liver. I have recommended that Mr. DiDomenico have a liver transplant. Mr. DiDomenico was scheduled to have this operation at the University of Chicago as soon as a donor becomes available. I am to perform the surgery.

3. Very recently, the University of Chicago was informed that Mr. DiDomenico's group insurance plan was refusing to cover this operation on the ground that the operation was "experimental". In the opinion of the undersigned, the liver transplant contemplated for Mr. DiDomenico is not "experimental", but is an appropriate and medically necessary treatment.

4. If Mr. DiDomenico does not have the liver transplant surgery in the immediate future, his life will be in grave danger.

(Plaintiff's Ex. 5). Dr. Kaplan also expressed similar concerns about the emergency nature of plaintiff's condition at the hearing on plaintiff's request for a preliminary injunction.

In March of 1987, plaintiff wrote the defendant advising it of the possibility that he might have to undergo a liver transplant. (Plaintiff's Ex. 4). Defendant did not respond to that communication and did not inform plaintiff that the Plan would not provide coverage for such an operation. In November, 1987, defendant contacted the University of Chicago and indicated that it would deny coverage because the contemplated surgery was, in its view, "experimental." The defendant may have also informed the University of Chicago of that same position in August, 1987. (*See* defendant's Ex. D).

As indicated, the defendant has refused to provide coverage on the grounds that a liver transplant in this case would be "experimental." The Welfare Benefit Plan provides that "organ transplants" are "covered charges." The Plan also provides that "transplants which are considered experimental" are not covered. In particular, the Plan provides:

Not Covered:

Transplants which are considered experimental or are done for purposes of research. Transplants of a kidney, cornea or a liver (for a child under age 12) are not considered experimental.

(Plaintiff's Ex. 2, p. 17). Because plaintiff is over 12 years of age and because the organ in question is a liver, defendant has refused coverage on the grounds that such a surgical procedure would be experimental.

In the declaration of Dr. Broelsch excerpted previously, Dr. Broelsch maintained that the liver transplant contemplated for Mr. DiDomenico is not experimental but is an appropriate and medically necessary treatment. At the hearing on the request for a preliminary injunction, Dr. Kaplan testified that for at least the past three to five years, liver transplants have not been considered to be experimental. In fact, Dr. Kaplan testified that the one year survival rate for recipients of liver transplants is from 75% to 85% with a deterioration rate of 3% to 5% each year for the following five years after which time the rate levels off. According to a 1987 article in the *American Journal of Gastroenterology*, the one year survival rate for liver transplant patients was 71%. (Plaintiff's Ex. 1).

The average cost of a liver transplant operation is, according to Dr. Kaplan, approximately $100,000. Over the next several years after the operation the cost for medication and treatments would be approximately $5,000 per year. All totaled, the approximate cost entailed in this type of a procedure is $125,000. This is roughly the equivalent of the cost for treatment for the same period of time for patients who do not receive transplants.

Even apart from the language of the Plan, defendant asserts that the Plan was never intended to provide coverage for liver transplants for patients over 12 years of age. According to the Plan administrator, Michael Peak, the Trust was formed in July, 1985 and it was the intention of the parties to follow the Mercke Manual and Medicare guidelines which allegedly indicate that liver transplants in patients over 12 years of age are experimental. There is no mention of either the Merke Manual or any guidelines, however, in any of the documents relating to the Plan.

Defendant's Plan provides coverage for 84 employers and 3,000 employees. Wayne Chemical, plaintiff's employer, first became covered under the Plan in February, 1987. Prior to accepting the Plan, William Spindler, owner and president of Wayne Chemical, expressed concern about coverage of two employees including plaintiff. According to Mr. Spindler, he was informed by William Zumbro, an employee of the defendant, that plaintiff's liver ailment would be covered under the Plan.

Based upon the foregoing, plaintiff filed suit in this court alleging that absent coverage under the defendant's Plan, he will be unable to afford the expenses incurred in a liver transplant operation. Because of the threat to plaintiff's life it is his position that he has no adequate remedy at law absent a preliminary injunction.

The Seventh Circuit outlined the non-discretionary actions that a district judge must take when considering a motion for preliminary injunction. *Darryl v. Gregory Coler*, 801 F.2d 893 (7th Cir.1986).

1. He must evaluate the traditional factors enumerated in the case law: whether there is an adequate remedy at law, the danger of irreparable harm, some likelihood of success on the merits. *See Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386-88 (7th Cir.1984).

2. He must make factual determinations on the basis of a fair interpretation of the evidence before the court.

3. He must draw legal conclusions in accord with the principled application of the law.

*Id.* at 898. The court went on to state that "the district court must somehow balance the nature and degree of the plaintiff's injury, the likelihood of prevailing at trial, the possible injury to the defendant if the injunction is granted, and the wild card that is the public interest." *Id.*

In *Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1432-35 (7th Cir.1986), the Seventh Circuit reviewed two of its prior opinions on the law of preliminary injunctions. *See Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380 (7th Cir.1984) and *American Hospital Supply Corp. v. Hospital Products Limited*, 780 F.2d 589 (7th Cir.1986). The court in *Lawson*, noted that both *Roland* and *American Hospital* make it clear that while preliminary injunctions are an equitable form of relief, they are an exercise of far-reach-

ing power. *Lawson,* 782 F.2d at 1433. This court recognizes that preliminary injunctive relief invokes a far-reaching power:

> The idea underlying these equivalent approaches is that the task for the district judge in deciding whether to grant or deny a motion for preliminary injunction is to minimize errors: the error of denying an injunction to one who will in fact (though no one can know this for sure) go on to win the case on the merits, and the error of granting an injunction to one who will go on to lose. The judge must try to avoid the error that is more costly in the circumstances.

*Roland,* 749 F.2d at 388. *See also American Hospital,* at 593. Thus, this court must choose the course of action that will minimize the costs of being mistaken.

*Lawson, Roland,* and *American Hospital* all adopted a "sliding scale" approach where the possibility of mistake would be minimized by weighing the costs of injunctive relief against the benefits. This principle was stated in mathematical terms, in *American Hospital,* at 593. The preliminary injunction should be granted if, but only if:

$$P \times Hp > (1 - P) \times Hd$$

The left hand of the equation is the magnitude of erroneously denying the injunction, arrived at by multiplying the probability that plaintiff will prevail at trial (P) by the harm to the plaintiff caused by the denial of the injunction (Hp). The right hand represents the magnitude of an erroneously granted injunction measured by multiplying the probability that the defendant will prevail at trial (1 − P, the inverse of the plaintiff's probability of success) by the harm to the defendant caused by the granting of the motion (Hd). *Id.* at 593–94; *Lawson,* 782 F.2d at 1433–34, *accord Illinois Psychological Ass'n. v. Falk,* 818 F.2d 1337, 1340 (7th Cir.1987). Obviously, this formula is not a substitute for, but an aid to, judgment. *Id.* at 1434. A figure representing the probability of success, for example, can only be arrived at through subjective estimate by the court. Nevertheless, the "sliding scale" approach is helpful

and will be considered in determining whether or not plaintiff is entitled to a preliminary injunction.

It is well established in the Seventh Circuit that the plaintiff has the burden of proving each of the factors enumerated in *Coler,* above. *Palmer v. City of Chicago,* 755 F.2d 560, 576 (7th Cir.1985); *Godinez v. Lane,* 733 F.2d 1250, 1257 (7th Cir.1984); *Technical Pub Co. v. Lebhar–Friedman, Inc.,* 729 F.2d 1136, 1138–39 (7th Cir.1984). A close examination of plaintiff's claims, reveals that plaintiff has carried his burden of proof.

To prevail, plaintiff must prove that he has no adequate remedy at law or that he will suffer irreparable harm if the injunction is denied. *On/TV v. Julien,* 763 F.2d 839 (7th Cir.1985); *Palmer, supra,* at 576. "The requirement of irreparable harm is needed to take care of the case where although the ultimate relief that the plaintiff is seeking is equitable, implying that he has no adequate remedy at law, he can easily wait until the end of trial to get that relief." *Roland, supra,* 749 F.2d at 386. In the present matter, it is clear beyond peradventure of doubt that plaintiff has established that he will suffer irreparable harm absent preliminary relief. This is not a case where plaintiff can wait until after trial for a remedy. Simply put, absent some form of preliminary relief plaintiff runs the real risk of dying and in such circumstances money damages would be wholly useless to plaintiff.

Aside from irreparable harm, plaintiff has also established a likelihood of success on the merits. Plaintiff's burden is to show that his likelihood of success is more than negligible. *Roland, supra,* at 387.

The language of the Plan relating to organ transplants is, to engage in understatement, ambiguous. At one point the Plan provides that organ transplants are covered while at another point the Plan provides that organ transplants which are "experimental" are not covered. The Plan states: "[t]transplants of a kidney, cornea or a liver (for a child under age 12) are not considered experimental." (Plaintiff's Ex.

2, p. 17). Given the foregoing parenthetical, the Plan can be read in at least two different ways with respect to liver transplants. First, it can be read to mean that liver transplants for everybody over 12 years of age are experimental. Alternatively, it could be read to mean that while liver transplants for children 12 years of age and under are not considered to be experimental, liver transplants for those over that age may or may not be experimental.

 Given the ambiguity in the Plan, plaintiff has established that his likelihood of success on the merits is more than negligible. With respect to medical plans, if an ambiguity exists, the terms of the policy "should be interpreted most favorabl[y] to the insured...." *Miller v. Dilts,* 463 N.E. 2d 257 (Ind.1984). Ambiguous provisions should be construed "to further the policy's basic purpose of indemnity." *Eli Lilly & Co. v. Home Insurance Co.,* 482 N.E.2d 467, 470 (Ind.1985). If the language of a policy is ambiguous the court must construe the policy against the party who drafted its terms. *Spears v. Jackson,* 398 N.E.2d 718 (Ind.App.1980).

At the hearing, defendant asserted that "the arbitrary and capricious" standard for ERISA cases apply to plaintiff's request for a preliminary injunction. Even if that standard applies, plaintiff has established that his likelihood of success on the merits is more than negligible.

The arbitrary and capricious standard has been phrased by courts as "whether the trustees have acted arbitrarily, capriciously, or in bad faith; that is, is the decision of the trustees supported by substantial evidence or have they made an erroneous decision on a question of law." *Wardle v. Central States Southeast and Southwest Area Pension Fund,* 627 F.2d 820, 824 (7th Cir.1980) citing *Danti v. Lewis,* 312 F.2d 345, 348 (D.C.Cir.1962). In the present matter there is evidence that the Plan administrators acted in an arbitrary and capricious manner. The Plan administrators in this case made no real effort to determine whether in fact a liver transplant for the plaintiff would be considered to be experimental. Rather, they relied upon what they believed to be the consensus of the Merke Manual and Medicare guidelines as of 1985. Although they may have requested plaintiff's medical records, they did not have those records in their decision. At the hearing, the Plan manager testified that the Plan did not have any physicians under contract although the administrator had some friend who were physicians and he would occasionally consult them about specific cases. There is no evidence in this record that any effort was made to determine the propriety and the medical necessity for a liver transplant for the plaintiff. Further, plaintiff's employer testified that he was informed prior to entering into the Plan that plaintiff's liver condition would be covered under the Plan. When all of these factors are taken into consideration, plaintiff has established that there is more than a negligible possibility that the defendant acted in an arbitrary and capricious fashion.

 In addition to the foregoing, a court in ruling on a motion for a preliminary injunction should also consider the public interest in the granting or denying of an injunction. With respect to public interest, it suffices to state that the interest in the sanctity and quality of life is paramount.

 As indicated, the Seventh Circuit has adopted a "sliding scale formula" whereby the possibility of mistake is minimized by weighing the cost of injunctive relief against the benefits. *American Hospital, supra,* 780 F.2d at 593. As also indicated, "a district judge asked to decide whether to grant or deny a preliminary injunction must choose the course of action that will minimize the cost of being mistaken." *Id.* In the present matter it is altogether clear that in order to minimize the cost of being mistaken plaintiff's request must be granted. If this court denies the request and plaintiff dies, it will have made the ultimate mistake as far as plaintiff is concerned. If, on the other hand, the court grants the request and it is mistaken, the only loss will be of a monetary nature.

### Conclusion

Accordingly, it is hereby ORDERED, ADJUDGED AND DECREED BY THE COURT:

1. That the application of plaintiff, Frederick J. DiDomenico, for a preliminary injunction against defendant, Employers Cooperative Industry Trust, also known as Employers' Cooperative Industry Employee Benefit Trust (hereinafter ECIT) is GRANTED.

2. Defendant, ECIT, and its officers, trustees, administrators, agents, employees, representatives, attorneys, successors and assigns, and all other persons in active concert or participation with it or them who receive actual notice of this order by personal service or otherwise, are hereby ORDERED as follows:

A. To provide coverage under ECIT's Plan with respect to plaintiff Frederick J. DiDomenico's liver condition and for any medical, surgical, hospital, or related health services provided to Frederick J. DiDomenico, including any such health services related to any liver transplant surgery performed on Frederick J. DiDomenico.

B. To refrain from any act which would interfere with or jeopardize plaintiff Frederick J. DiDomenico's right or ability to obtain necessary medical, surgical, hospital or related health services with respect to his liver condition.

C. To inform any medical, surgical, hospital or other health services provider which makes inquiry of ECIT or any of its agents or representatives that this court has enjoined ECIT to provide such coverage.

3. Under Rule 65(c) of the Federal Rules of Civil Procedure, "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper...." "Under appropriate circumstances bond may be excused, notwithstanding the literal language of Rule 65(c)," *Wayne Chemical, Inc. v. Columbus Agency Service Corp.*, 567 F.2d 692, 701 (7th Cir.1977), such as where the party seeking the injunction is indigent. *Id.*

While present plaintiff is not indigent, the court is of the view that given the financial circumstances of the plaintiff a requirement of a bond in excess of $10,000 "would serve no purpose either in law or equity." *Wayne Chemical v. Columbus Agency Service Corp.*, 426 F.Supp. 316, 326 (N.D. Ind.), *aff'd*, 567 F.2d 692 (7th Cir.1977). Accordingly, plaintiff shall post a sum in the amount of $10,000.

4. This preliminary injunction shall take effect immediately at the time and date of its entry and it shall remain in effect until further order of this court.