933 F.2d 1001
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Charles P. BURDETTE,
v.
William E. MEES, James Steubenrod, William H. Thorne, John
W. Saunders, Maurice Wine, Roy Smith, Neal S. Boyce, Howard
O. Allen, Morris Y. Alderman, Thomas M. Pendergast, Curtis
Given, Michael E. Duskey, Keith A. Smith, William H. Jones,
III, Trustees of the West Virginia-Ohio Valley I.B.E.W.
Welfare Fund and the West Virginia-Ohio Valley Area I.B.E.W.
Welfare Fund, Defendants-Appellants.
Charles P. BURDETTE, Plaintiff-Appellant,
v.
William E. MEES, James Steubenrod, William H. Thorne, John
W. Saunders, Maurice Wine, Roy Smith, Neal S. Boyce, Howard
O. Allen, Morris Y. Alderman, Thomas M. Pendergast, Curtis
Given, Michael E. Duskey, Keith A. Smith, William H. Jones,
III, Trustees of the West Virginia-Ohio Valley I.B.E.W.
Welfare Fund and the West Virginia-Ohio Valley Area I.B.E.W.
Welfare Fund, Defendants-Appellants.
 Nos. 90-3108, 90-3118.
 United States Court of Appeals, Fourth Circuit.
 Argued March 4, 1991.
Decided May 23, 1991.
 
 Appeals from the United States District Court for the Southern District of West Virginia, at Charleston. John T. Copenhaver, Jr., District Judge. (CA-88-67-2)
 Robin Jean Davis, Hostler & Segal, Charleston, W.Va. (Argued), for appellants; Stanley M. Hostler, Hostler & Segal, Charleston, W.Va., on brief.
 John Robert McGhee, Jr., Kay, Casto, Chaney, Love & Wise, Charleston, W.Va., for appellee.
 S.D.W.Va.
 AFFIRMED.
 Before DONALD RUSSELL, Circuit Judge, JAMES C. HILL, Senior United States Circuit Judge for the Eleventh Circuit, sitting by designation, and HIRAM H. WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Appellee George Burdette brought this action under 29 U.S.C. Sec. 1132 of the Employee Retirement Security Act of 1974 (ERISA) from a denial of medical benefits by appellant West Virginia-Ohio Valley Area IBEW[1] Welfare fund (the "Fund"). He sought reimbursement in the amount of $8,662.60, together with interest, costs, and attorney's fees. After discovery, both parties moved for summary judgment. The district court granted Burdette's motion and found that the Fund violated sections 1132 and 1133 of ERISA by failing to properly notify Burdette of the reason for denial of coverage and by failing to provide him with a fair opportunity to present evidence in support of his claim. Additionally, the court found that the Fund acted arbitrarily and capriciously in denying Burdette's appeal because the Fund's decision was not based on substantial evidence. The district court then remanded the action back to the Fund for a determination of whether the transplant was excluded from coverage because it was experimental, with the court indicating that it probably was not. The court allowed Burdette to reapply for costs and attorney's fees in the event he prevailed in his renewed attempt to seek coverage. The Fund appealed, and Burdette cross-appealed on the issue of remand to the Fund. We affirm.
 
 
 2
 * Burdette is an engineer and member of IBEW Local 466 in West Virginia. Both he and his late wife Phyllis were members of the Fund, which administers medical benefits and is governed by ERISA. Around 1980-81, Mrs. Burdette was diagnosed as having chronic myeloid leukemia ("CML"). By 1986, chemotherapy was no longer effective, and her physician advised her that a bone marrow transplant would be the only more effective treatment. In that year, the University of Minnesota accepted her as a participant in their bone marrow transplantation program. The program required a third party guarantor before she could have a transplant, so Burdette requested coverage from the Fund. The Fund administrator, Mr. Elzy Carter, denied the request. On August 5, 1986, Dr. Wesley Miller, associate director of the bone marrow transplantation program, wrote the Fund and informed them of the nature of the proposed treatment and requested confirmation of coverage.
 
 
 3
 On August 8, Burdette wrote Mr. Carter to appeal the adverse decision. He stated that he was unclear as to the reasons for his denial and requested to be notified if any medical records were needed for the reconsideration. He also asked that he be given a written notice of denial should his appeal be unsuccessful. On August 13, Mr. Carter wrote back and informed Burdette that his denial would be reviewed at the next Administrative Committee meeting. Also enclosed was a copy of the Fund's claims procedures manual. On August 19, Burdette was informed that his denial had been affirmed at the August 14 meeting of the Administrative Committee based on "section 14 under General Exclusions ... and past decisions on transplants."[2]
 
 
 4
 Burdette retained counsel and pursued an appeal to the Fund's Board of Trustees. On October 13, 1986, Burdette's counsel sent a letter to the Fund informing it of the further appeal. Also sent was a letter from Mrs. Burdette's local physician, Dr. Gomez, which outlined her medical need for the treatment, as well as an article from The New England Journal of Medicine regarding bone marrow transplants for patients with CML. Burdette was notified that his appeal would be heard at a special board meeting on December 12. The Fund's attorney informed Burdette through counsel that, while it was technically too late to present further evidence in support of his claim, he would recommend to the Trustees that they consider Dr. Gomez' letter and the article submitted on October 13.
 
 
 5
 The meeting was held at the appointed time, although neither Burdette nor his counsel were present. Burdette had not planned to attend, and his counsel apparently was unable to attend because his flight was canceled due to inclement weather. In any event, their presence was not required. However, the Trustees, by unanimous vote, sustained the decision of the Administrative Committee "on the basis that Burdette had not appeared or presented any evidence in support of his position." No evidence was examined prior to this decision; however, Dr. Miller's letter of August 5 was subsequently examined.
 
 
 6
 The principal amount was for charges incurred from July through November, 1986 in preparation for the transplant. Mrs. Burdette died in March, 1987 before a donor could be found.
 
 II
 
 7
 The issues presented are 1) whether the Fund offered a reasonable interpretation of the plan; 2) whether the Fund violated Sections 1132 and 1133 of ERISA; and, 3) whether remand to the Fund for a redetermination of benefits is the proper remedy.
 
 
 8
 * In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), the Supreme Court set forth the standard when reviewing a denial of benefits under an ERISA plan. Abandoning the strict arbitrary and capricious standard which many courts had used until then, the Court held that a denial of benefits under a plan is to be reviewed under a de novo standard unless the plan gives the administrator discretionary authority to interpret the plan's provisions. Id. at 115. Here, it is uncontested that the plan offered the administrator discretionary authority. Therefore, our review is a deferential one. We must determine whether the Trustees abused their discretion or acted arbitrarily and capriciously in denying Burdette benefits. We emphasize that the scope of this review is narrow; this court is not empowered to "substitute its own judgment for that of the agency" when the plan fiduciaries have offered a reasonable interpretation of a plan's provisions. Bowman Transportation, Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281 (1974); De Nobel v. Vitro Corp., 885 F.2d 1180, 1188 (4th Cir.1989). In this case, however, the district court correctly found that the Trustees acted in an arbitrary and capricious manner.
 
 
 9
 In determining whether the Fund acted in an arbitrary and capricious manner, this court may, among other factors, look to see if the decision of the Trustees was based on substantial evidence. Stanton v. Gulf Oil Corp., 792 F.2d 432, 434 (4th Cir.1986); Horn v. Mullins, 650 F.2d 35, 37 (4th Cir.1981). Here, substantial evidence was conspicuously absent.
 
 
 10
 The Fund argues that it reasonably interpreted the plan in excluding Mrs. Burdette from coverage on the basis that her proposed transplant was "experimental." The Fund was in the process of acquiring special insurance coverage specifically for transplants at the time Mrs. Burdette made her claim. In fact, the Fund obtained this insurance less than one month after the claim was denied. The Fund argues that this fact demonstrates that the Fund knew that a bone marrow transplant was not covered by the existing plan, and it posits that this was because of its experimental nature.
 
 
 11
 We do not agree that the Fund's decision to deny benefits can be characterized as reasonable when it was not founded on substantial evidence. The Fund Trustees had no formal medical training, nor was any evidence reviewed by the Trustees at the special meeting. In fact, the vote at the special meeting which affirmed the denial of benefits was taken prior to a distribution of the facts in the appeal. The only medical evidence examined by the Fund was the letter from Dr. Miller which did not seem to indicate that the procedure was experimental. Such a failure to consult with medical authorities in making a decision as to whether a proposed treatment is experimental has been found to be arbitrary and capricious. See Di Domenico v. Employer's Cooperative Indus. Trust, 676 F.Supp. 903, 908 (N.D.Ind.1987).[3]
 
 
 12
 Further evidence illustrating the apparent lack of a reasoned basis for the Fund's decision are the varying opinions on what constitutes a "day-to-day" procedure as suggested by the plan administrator, Elzy Carter, and the plan "consultant," Kenneth Joos.[4] When asked this question in depositions, Mr. Carter replied that he thought "day-to-day" meant that the procedure must be done every day. (J.A. 339) Mr. Joos thought that it meant that it must be done within one day. (J.A. 366-370) Both Mr. Carter and Mr. Joos also stated that "experimental" was simply too broad to be defined adequately.
 
 
 13
 Finally, the Fund's inquiry into transplant insurance coverage indicates that the Fund did not consider such procedures experimental. If the transplant at issue were truly experimental, then the Fund should deny it under Section 14 even if it had insurance to cover transplants. The resulting ambiguity in the plan would hardly seem to be the Fund's intention. While the Fund's counsel at oral argument stated that the Fund was merely offering additional coverage by obtaining transplant insurance, we are not convinced that its purchase does not tend to show that the Fund may have thought it was exposed to liability under the plan at the time.
 
 
 14
 A careful review of the record indicates that there was simply not enough information before the Fund to constitute substantial evidence. Without it, and in light of the conduct of the Trustees at the special meeting, it appears that the district court correctly concluded that the decision denying benefits was an arbitrary and capricious one.
 
 B
 
 15
 The next question is whether Section 1133 of ERISA was violated. ERISA Section 1133 (29 U.S.C. Sec. 1133) and its corresponding regulation at 29 C.F.R. Sec. 2560.503-1(f) set out the requirements which must be complied with in giving a notice of denial of coverage. These provisions require that each claimant be provided with notice stating the specific reasons for the denial, as well as a description of any additional information or material needed to perfect a claim. Although Burdette expressly asked in his letter to the plan administrator what, if any, medical information the Fund might require to substantiate his claim, no response containing such information was forthcoming. The Seventh Circuit has held that a simple letter to a claimant which merely concludes that his claim was denied without giving a specific reason is insufficient to comply with section 1133. Wolfe v. J.C. Penney Co., 710 F.2d 388 (7th Cir.1983). We agree in this case. Merely telling Burdette that the procedure was "experimental" was conclusory and is insufficient to comply with ERISA requirements in this case. Although the Fund argues that all of the needed requirements were present in the claims procedure manual which was sent to Burdette after the denial, we are not persuaded in light of the ERISA violation. Even if the manual were sufficient, it still would not satisfy ERISA because the necessary information is not presented in a manner easily understood by a claimant. 29 C.F.R. Sec. 2560.503-1(f).
 
 C
 
 16
 The final issue before us is whether remand to the Fund was proper. Burdette argues that reversal, not remand to the Fund, was the proper remedy. His basis is that any further evidence which he would present to the Fund on the issue of whether the procedure was experimental would be unnecessarily cumulative. Therefore, remand would be a "useless formality." Wolfe, supra. We disagree. On these facts, the paucity of the evidence which was before the Fund should alone be enough to warrant remand so that the Fund may make a proper and informed decision.
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 International Brotherhood of Electrical Workers
 
 
 [2]
 Section 14 provides that no benefits will be payable under the Fund for "[s]urgical procedures and other medical procedures that are experimental in nature including but not limited to heart transplants, lung transplants, and similar organ replacement surgeries unavailable on a day-to-day basis." The Fund had only dealt with transplants once before, when a heart transplant was denied. That procedure, however, is expressly excluded from the plan's coverage by Section 14
 
 
 [3]
 The district court below conducted an exhaustive and authoritative inquiry into the nature of bone marrow transplants performed at the time of the denial in 1986, and concluded that the procedure was probably not then experimental
 
 
 [4]
 Section 14 of the plan mentions as exclusions those procedures not done on a "day-to-day" basis. See footnote 2, supra