George WOLFE, Plaintiff-Appellee,

v.

J.C. PENNEY COMPANY, INC., et al., Defendants-Appellants.

No. 82–2586.

United States Court of Appeals, Seventh Circuit.

Argued April 11, 1983.

Decided June 22, 1983.

Charles E. Bruess, Barnes & Thornburg, Indianapolis, Ind., for defendants-appellants.

Richard C. Rusk, Washington, Ind., for plaintiff-appellee.

Before BAUER and WOOD, Circuit Judges, and BROWN, Senior Circuit Judge.[*]

HARLINGTON WOOD, Jr., Circuit Judge.

The plaintiff, George Wolfe, a former employee of the defendant J.C. Penney Company ("Penney"), applied for benefits under Penney's Long-Term Disability Benefit ("LTD") Plan. The administrator of the LTD Plan, Prudential Insurance Company ("Prudential"),[1] denied Wolfe's application because it found that Wolfe was not disabled within the meaning of the Plan. Wolfe contested this denial by bringing this action under section 502 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132. The district court overturned the decision denying bene-

---

[*] The Honorable Bailey Brown, Senior Circuit Judge of the Sixth Circuit, is sitting by designation.

[1.] Prudential was a defendant in the district court but not a party to this appeal; the district court ruled that Prudential was not a fiduciary under ERISA and thus could not be held liable as a fiduciary. For purposes of administering the LTD Plan, Penney established the defendant-appellant J.C. Penney Company, Inc., Voluntary Employee's Beneficiary Association ("Association"). In turn, the Association was managed by the defendant-appellant Board of Governors of the J.C. Penney Company, Inc., Voluntary Employee's Beneficiary Association ("Board of Governors"). The Board of Governors was the named fiduciary of the Penney LTD Plan and entered an administrative service contract with Prudential whereby Prudential agreed to provide certain claims services relating to the LTD Plan.

fits and instated Wolfe into the LTD Plan. The issues raised by this appeal are: (1) whether the letter notifying Wolfe of Prudential's decision satisfied 29 U.S.C. § 1133, and (2) whether the district court properly instated Wolfe under Penney's LTD Plan.

## I. Facts

Wolfe worked in various positions for Penney from 1955 until Penney terminated him on October 6, 1976. From July of 1966 until his termination, Wolfe managed Penney's Washington, Indiana store. In July of 1972, Wolfe suffered serious health problems, requiring hospitalization and surgery. Despite his health problems, Wolfe continued to work as a store manager.

In October, 1975, Tony Haake became the Penney district manager responsible for Wolfe's store. Haake visited Wolfe's store in April, 1976, and noted a number of problems respecting profits, markdowns, and overstocking. At this time, Wolfe did not say that his health caused him difficulty in performing his duties.

Upon returning in August, 1976, Haake saw no improvements and, therefore, asked Lanny Benson, the regional personnel manager, to inspect and evaluate Wolfe's store. Benson confirmed Haake's conclusion that Wolfe was seriously deficient as a manager. During the August, 1976 visit, Benson questioned Wolfe about his health. Wolfe assured Benson that he felt fine and was capable of performing his duties.

Because the problems with Wolfe's store continued to escalate, Haake went to the store on October 6, 1976. When told that Wolfe was at home for lunch, Haake called Wolfe's home, requesting that he come to the store. With Benson's approval, Haake told Wolfe that he could resign or be terminated; Wolfe resigned. Although he was ill, Wolfe made no mention of his health problems to Benson.

On November 18, 1976, six weeks after Wolfe's termination, his wife Dorothy wrote to Benson, inquiring about possible disability benefits. On December 6, 1976, Dr. Murray, Wolfe's physician since 1971, wrote to Benson, stating that Wolfe had been disabled by "depression syndrome" since "early 1974." Benson wrote to Robert Bivona of Penney's Benefits Administration Office concerning Mrs. Wolfe's inquiry.[2]

As a result, information respecting the LTD Plan was sent to Wolfe. On March 24, 1977, a claim for benefits was filed on Wolfe's behalf. The material filed with Prudential included Wolfe's statement of disability form, Dr. Murray's Attending Physician's Statement, the medical records submitted by Dr. Murray, Benson's December 13, 1976 letter to Bivona, and Dr. Murray's December 6, 1976 letter to Benson.

John Murray was the person at Prudential principally responsible for processing Wolfe's claim. Under the Plan, a Penney employee ceases to be a Participant on "the date of termination of employment." *Id.* at 48–49. However, the Plan provided that:

If a Participant's active service terminates because of injury or sickness for which Monthly Benefits are or may become payable under the Plan, he will continue to participate during the Benefit

2. The letter stated:

We released [Wolfe] on October 6th of this year for failure to meet Company Standards. His performance frankly, had been marginal for many years. From late 1972 thru January of 1974, he underwent several surgical procedures, however, he assured us several times since his last operation that he was feeling fine. In fact, I personally visited his store on August 26th of this year and George commented to me that he was in good health. I did not note any depression in his attitude or manner at that time.

Since his dismissal from the Company, his wife states that he is terribly depressed and has been committed to a hospital for care and treatment. Mrs. Wolfe feels that George may qualify for some type of disability earnings. She further stated, during our phone conversation, that her husband simply left the store the day he was released with little or no personal papers and that due to his condition, she has been unable to determine exactly what benefits, insurances, etc. to which he is entitled.

A December 6th letter from Mr. Wolfe's doctor (copy enclosed) offers an opinion that his current depression syndrome tracks back to early 1974.

Defendants-Appellants' Appendix at 100.

Qualifying Period and during the period for which Monthly Benefits are payable. *Id.* at 49. To find out why Penney terminated Wolfe, Murray telephoned Benson on April 25, 1977. Benson informed Murray that Wolfe was terminated because of substandard job performance and not because of health problems or sick time.

On the basis of the information before him, Murray decided the claim should be denied and wrote to Wolfe informing him of his decision.[3] Although Murray and Dr. Murray had further correspondence, no further information was provided to Prudential before Wolfe filed this action on February 23, 1979.

At trial, the district court admitted additional evidence regarding Wolfe's claim over the defendants-appellants' objection. The additional evidence consisted of testimony by Dr. Murray (which went beyond the Attending Physician's statement), Wolfe, Bernice Gress (Wolfe's co-worker), and Dorothy Wolfe. Because the district court admitted Wolfe's additional evidence over the objection that review was limited to the evidence before Prudential, the defendants-appellants called Haake and Benson as witnesses.

## II. 29 U.S.C. § 1133

Wolfe contends that the May 11, 1977 letter from Prudential, denying his application, violated the ERISA Procedural requirements set forth in 29 U.S.C. § 1133.[4] Section 1133 provides:

In accordance with regulations of the secretary, every employee benefit plan shall—

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

The pertinent federal regulation promulgated by the Secretary of Labor to implement the statutory mandate provides:

(f) *Content of notice.* A plan administrator or, if paragraph (c) of this section is applicable, the insurance company, insurance service, or other similar organization, shall provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:

(1) The specific reason or reasons for the denial;

(2) Specific reference to pertinent plan provisions on which the denial is based;

(3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

3. Murray's letter explained as follows:

Under the terms of the Plan, in order to qualify for benefits, an individual's absence from Active Service must be caused by sickness or accidental bodily injury, directly and independently of all other causes. A review of the information submitted with your file indicates that your absence from Active Service was due to your being terminated by J.C. Penney, rather than sickness or injury. The medical information in our file does not indicate that sickness or bodily injury, directly and independently of all other causes, caused you to stop working at that time. Your coverage under the Plan ended upon your termination by J.C. Penney, so you would not have been covered at any point subsequent to the termination when you might actually have

become disabled or been hospitalized. In view of the above, we have no alternative but to deny your claim for benefits.

Please be advised that our decision has only been reached after a very careful review of all the information in our file. We are, of course, willing to review any additional medical information which you might wish to submit, indicating that your employment was terminated due to medical reasons in October of 1976. Should you wish to submit such additional medical information, or should you desire a review of our decision, you may write to me in the Group Life Claim Division of Prudential at the address shown above. *Id.* at 107.

4. The district court did not resolve this claim.

(4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. § 2560.503–1(f) (1980). However, this regulation became effective on October 1, 1977, months after Prudential sent the denial letter. Nonetheless, in order to satisfy 29 U.S.C. § 1133, a denial letter must substantially (not strictly) comply with 29 C.F.R. § 2560.503–1(f). Compliance with subsections (1) and (2) of section 2560.503–1 is necessary to meet subsection (1) of section 1133. Indeed, 29 C.F.R. § 2560.503–1(1) tracts the language of 29 U.S.C. § 1133(1). The 29 C.F.R. § 2560.503–1(2) requirement of specifying the pertinent plan provision may be, in a particular case, essential for the participant to fully apprehend the reason for the denial and to know what deficiency in his application must be overcome. Satisfaction of 29 C.F.R. § 2560.503–1(3) contributes towards the requirements of both subsections of section 1133. Describing additional information needed and explaining its relevance, as required by subsection (3) of 29 C.F.R.

§ 2560.503–1, enables a participant both to appreciate the fatal inadequacy of his claim as it stands and to gain a meaningful review by knowing with what to supplement the record.[5] Finally, subsection (4) of 29 C.F.R. § 2560.503–1 must invariably be met to satisfy section 1133(2).

▪ The letter from Prudential misses the section 1133 target. The "reason" given for denial is not a reason but a conclusion.[6] See generally, Richardson v. Central States, Southeast and Southwest Areas Pension Fund, 645 F.2d 660, 664 (8th Cir. 1981); Grossmuller v. Budd Co. Consolidated Retirement Benefit Plan for Employees, 547 F.Supp. 111, 114 (E.D.Pa.1982); Hayden v. Texas—U.S. Chemical Co., 557 F.Supp. 382, 386 (E.D.Texas 1983). Murray's reasoning for denying Wolfe's claim is stated quite clearly, however, in a memorandum to his supervisor.[7] An explanation along the lines provided in the memorandum would have apprised Wolfe of the reason for the denial, alerted him to the deficiency of the record accompanying his claim, and thereby aided him in building his claim with additional evidence.

5. In dicta, we previously indicated that this requirement must be met in certain instances, even though the claim and the denial letter both preceded 29 C.F.R. § 2560.503–1(f). Wardle v. Central States, Southeast and Southwest Areas Pension Fund, 627 F.2d 820, 828 n. 17 (7th Cir.1980). In Wardle, we noted:

Although Wardle does not raise this issue, we note with concern the skeletal nature of the letters explaining the Committee's reasons for its decision. Although they informed Wardle that his application had been denied because he was self-employed while working for Purcell and Lovelace, the letters arguably did not set forth the reasoning behind the decision or the type of information necessary for him to qualify for a pension. See 29 U.S.C. § 1133; 29 C.F.R. § 2560.503–1(f).

Id.

6. Furthermore, some of the language used in the letter created confusion rather than understanding. The letter's reference to "Active Service" is cryptic without either a citation to the LTD Plan's definition of the phrase or a definition of the term within the letter.

7. In the memorandum, Murray states:

Admittedly, associate did have a good deal of physical problems, with several major surgeries since that time, but a review of those hospital records reveals only two notations relating to emotional or psychiatric problems.... Dr. Murray indicates in his ltr [sic] of 12–6–76 that he didn't realize the severity of Associate's emotional problems, & since associate was reluctant to seek treatment, he didn't push him in that direction until after LDAS. Dr. concludes that Associate has been "disabled by this depression since early 1974...."

Would conclude that Associate was functioning on the job up until 10–6–76. He did, according to AP, have emotional problems going back to 1974, & was able to work in spite of same. Those emotional problems were not severe enough to rate more than the 2 notations in his hospital records, as discussed above. Associate apparently had no psychiatric care until after his employment was terminated. In all probability, the emotional shock of his termination probably served to exacerbate his problems, & to push him to a point finally requiring treatment, rather than his emotional problems or treatment thereof causing his work to suffer and his being terminated. Since his disability did not cause him to be absent from active service (his termination did), would deny LTD and "S" claim.

Appendix at 105–106.

The only type of information which the denial letter indicates Wolfe should supply is "medical information." As Wolfe's claim file already contained substantially all of the medical records from Dr. Murray's treatment file, Wolfe was no doubt at a loss as to what more he might submit; although, as the trial in district court bore out, Wolfe had additional, relevant evidence. Particularly where, as here, the record itself raises significant questions respecting the merits of the claim, a fiduciary (or its agent) ought to specify with some detail what type of information would help to resolve these questions, and how the applicant should present such information. *See generally, Grossmuller v. International Union, U.A.W.,* 511 F.Supp. 709, 710 (E.D. Pa.1981). Prudential's failure to indicate the type of information which Wolfe should submit becomes critical in light of the sparse reasons for denial contained in the letter.

Finally, the denial letter is frugal with information pertaining to the steps to be taken for obtaining review. Therefore, we hold that the procedure outlined by section 1133 was not met.

■ Although every procedural defect will not upset a trustee's decision, here, fairness requires that Prudential's decision be set aside. A decision to deny benefits under a plan covered by ERISA will be overturned when "(1) arbitrary and capricious, (2) not supported by substantial evidence, or (3) erroneous on a question of law." *Peckham v. Board of Trustees,* 653 F.2d 424, 426 (10th Cir.1981).[8] We view Prudential's procedural error as a significant error on a question of law, erroneously interpreting and applying section 1133. The additional evidence which Wolfe ad-duced at trial suggests that if Prudential had complied with section 1133, Wolfe would have supplemented the record before Prudential, sought and received a full and fair review before the Board of Governors, and obtained a decision one way or the other based upon substantial evidence.

■ Wolfe is not entitled to a substantive remedy, however, based upon Prudential's procedure violation. *Grossmuller v. International Union, U.A.W.,* 511 F.Supp. 709, 710 (E.D.Pa.1981). Rather, this case must be remanded to the fiduciary for a new determination of Wolfe's claim.

### III. Instatement in the LTD Plan

The district court overturned Prudential's decision because Prudential "arbitrarily and capriciously failed to develop any evidence on the relationship between the plaintiff's medical history and his poor job performance." *Wolfe v. J.C. Penney Co.,* No. EV 79–33–C at 20 n. 6 (S.D.Ind. Sept. 1, 1982). In particular, the district court determined that Prudential should have exercised its authority to have Wolfe examined by a physician during the claim's pendency in light of the "mass of uncontroverted medical information submitted" and "Prudential's recognition of the critical nature of the circumstances surrounding the plaintiff's determination...." *Id.* at 18–20. *See generally, Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.,* 698 F.2d 802, 811 (6th Cir.1983) (a trustee has a limited duty to investigate and a concomitant duty not to undertake unreasonable investigations to determine coverage). As a remedy for this procedural defect, the district court instated Wolfe in the LTD Plan because "given the

---

**8.** This standard is followed in all circuits which have addressed the question. *Fine v. Semet,* 699 F.2d 1091, 1093 (11th Cir.1983); *Palino v. Casey,* 664 F.2d 854, 858 (1st Cir.1981); *Horn v. Mullins,* 650 F.2d 35, 37 (4th Cir.1981); *Rosen v. Hotel and Restaurant Emp. & Bartenders Union,* 637 F.2d 592, 596 (3d Cir.), cert. denied, 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981); *Wardle v. Central States, Southeast and Southwest Areas Pension Fund,* 627 F.2d 820, 823–24 (7th Cir.1980), cert. denied, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981); *Bayles v. Central States, Southeast and Southwest Areas Pension Fund,* 602 F.2d 97, 99–100 (5th Cir.1979); *Bueneman v. Central States, Southeast and Southwest Areas Pension Fund,* 572 F.2d 1208, 1209 (8th Cir.1978); *Riley v. MEBA Pension Trust,* 570 F.2d 406, 410 (2d Cir.1977); *Rehmar v. Smith,* 555 F.2d 1362, 1371 (9th Cir.1976); *Johnson v. Botica,* 537 F.2d 930, 935 (7th Cir.1976).

unliklihood [sic] that an examination of the plaintiff's health at the present time would shed any light upon his ability to perform his job in 1976, the court [was] of the opinion that an award without remand [was] appropriate." *Id.* Regardless of whether Prudential based its decision on substantial evidence, we must reverse the district court's directive to instate Wolfe into the LTD Plan.

 In reviewing a fiduciary's decision, "[a] federal court is to focus on the evidence before the truste[e] at the time of [his] final decision and is not to hold a *de novo* factual hearing on the question of applicant's eligibility." *Wardle v. Central States, Southeast and Southwest Areas Pension Fund,* 627 F.2d 820, 824 (7th Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981). *See also Miles v. New York State Teamsters Conference,* 698 F.2d 593, 599 (2d Cir.1983). Policy considerations favor allowing the fiduciary to decide an employee's benefit eligibility. *Taylor v. Bakery & Confectionary Union,* 455 F.Supp. 816, 820 (E.D.N.C.1978) (discussing importance of exhaustion). When additional evidence on the merits of the claim for benefits is presented for the first time to the district court, the court should remand to the fiduciary to make the initial assessment of whether such facts establish an applicant's eligibility. *Wardle,* 627 F.2d at 828. This is necessary to insure that the fiduciary retains the "primary responsibility for claim processing" that Congress intended. *Challenger v. Local Union No. 1,* 619 F.2d 645, 649 (7th Cir.1980). No remand is necessary, however, where it "would be a 'useless formality.'" *Id.* (quoting *Ruth v. Lewis,* 166 F.Supp. 346, 349 (D.D.C.1958). In *Wardle,* we considered remand unnecessary where the unsuccessful applicant presented additional evidence which strengthened his position only minimally. *Wardle,* 627 F.2d at 828. Thus, we upheld the fiduciaries' decision and did not overturn it based on the additional evidence.

 In contrast to *Wardle,* the additional evidence introduced at trial by Wolfe and the defendants-appellants is significant and

led the district court to overturn the denial. Although a present examination of Wolfe is not apt to reveal whether he was disabled on October 6, 1976, Prudential must be permitted to evaluate the additional evidence produced at trial and determine Wolfe's eligibility. If Wolfe prevails at the hearing before the fiduciary, Wolfe would then be entitled to retroactive benefits. We do not, however, intend to indicate a view as to a final decision on the merits, only that the plaintiff is entitled to reconsideration of his claim by the fiduciary, the Board of Governors.

Reversed and remanded to the district court with direction to remand to the fiduciary.