Mark E. ADAMS, et al., Plaintiffs,

v.

AMPCO–PITTSBURGH CORPORATION,
Greenlease Holding Company, formerly
Greenville Steel Car Company, and
Greenville Car Company Termination
Allowance Plan, Defendants.

Civ. A. No. 87–2266.

United States District Court,
W.D. Pennsylvania.

Dec. 18, 1989.

Donald R. McKay, Sharon, Pa., for plaintiffs.

Hollis T. Hurd and P. Jerome Richey, Pittsburgh, Pa., for defendants.

## MEMORANDUM ORDER

D. BROOKS SMITH, District Judge.

This matter is before the Court on defendants' Motion for Partial Summary Judgment. Defendants Ampco–Pittsburgh Corporation, Greenlease Holding Company, and Greenville Steel Car Company Termination Allowance Plan (Plan) urge the dismissal of Counts II and III of plaintiffs' complaint, which seek severance benefits allegedly due under a termination plan subject to the Employee Retirement Income Security Act of 1974, as amended (ERISA),

29 U.S.C. § 1001 et seq. The Plan is an unfunded welfare plan exempt from the vesting and funding standards imposed on funded plans by ERISA. See 29 U.S.C. §§ 1051(2), 1081(a)(3). The Plan is subject to ERISA's reporting and disclosure requirements. 29 U.S.C. §§ 1021–1031.

The plaintiffs are former salaried, non-union employees of Greenville Steel Car Company, a wholly owned subsidiary of Ampco–Pittsburgh Corporation. On December 18, 1986, the assets of Greenville Steel Car Company were sold to Trinity Industries, Inc., pursuant to a purchase agreement dated December 9, 1986. Trinity continued to operate the Greenville, Pennsylvania, rail car manufacturing plant without interruption by hiring most of Greenville Steel Car Company's employees, including all of the plaintiffs seeking recovery under counts II and III. Greenville Steel Car Company ceased its operations at the Greenville plant, and changed its name to the Greenlease Holding Company.

The plaintiffs were originally covered by a termination plan dated July 1, 1984, which provided:

1.1 A salary termination allowance will be paid to only those employees whose services are terminated by the company pursuant to a reduction in force.

The plan provided that benefits would be paid at the rate of one week's pay for each full year of service, with a minimum of two weeks' benefits, and a maximum of twenty-six weeks' benefits.

The termination plan was revised by a document dated December 30, 1985, effective January 1, 1986. The revised plan provided a reduced schedule of benefits, and eliminated the provision that layoffs of more than twelve consecutive months would be deemed permanent and would trigger benefits payments. As amended, the layoff provision read:

2.1 A termination allowance will not be paid when the workforce reduction is considered temporary and the Company intends to recall the employees who are laid off.

The language of Section 1.1, providing that payments would be made only pursuant to a reduction in force, was unchanged.

The termination plan was revised once again, after this litigation commenced, by a resolution of the directors of the Greenlease Holding Company, on March 1, 1988, with a retroactive effective date of January 1, 1986. The revisions made it explicit that the "benefits of the Plan will be paid out of the assets of the Company," and that the Company was the administrator of the Plan, except for decisions regarding claims and appeals. The Greenlease resolution appointed John F. Toole, Sr., as Plan Administrator, and Robert Schultz, Ampco–Pittsburgh's director of Industrial Relations, as Appeal Administrator. Toole and Schultz were the principal drafters of the 1984 and 1986 plans, which were used by each of the divisions of Ampco–Pittsburgh.

Plaintiffs made their first claim for termination allowance pay in September 1987. Based on its interpretation of the termination plan, Greenlease Holding Company denied termination benefits to plaintiffs on the grounds that the total sale of assets of the Greenville Steel Car Company to Trinity Industries and the continuation of the operations of the Greenville plan did not constitute a reduction in force. Plaintiffs then filed suit in the Court of Common Pleas of Mercer County, on September 14, 1987, naming only Ampco–Pittsburgh as a defendant. After this matter was removed to this Court, the parties jointly agreed to stay this action to allow plaintiffs to exhaust their administrative remedies under the Plan. It appears that the administrative claims were submitted to John Toole, Sr., in February, 1988, and denied by him in March, 1988. Plaintiffs' appeals of Toole's denials of claims were submitted to Robert Schultz, who affirmed Toole's denial of benefits in May, 1988. Toole and Schultz provided the same explanation for the denial of termination benefits, namely, that plaintiffs were not eligible because they had not been terminated pursuant to a reduction in force. As Schultz explained:

The term 'reduction in force' typically refers, and the phrase is intended to refer in the Plan, to a situation where an

employer permanently severs the employment of some of its employees for economic reasons, but continues operating the facility in question at a reduced level of manpower. In short, a reduction in force occurs under the Plan when the Company, in an effort to continue the operation of a plant, permanently terminates the employment of an individual in order to downsize its workforce.

Defendants' Motion for Partial Summary Judgment, Exhibit "4". (Hittle deposition Exhibit "3").

Additionally, defendants aver, without contradiction by plaintiffs, that the identical termination plan has been interpreted the same way throughout all the divisions of Ampco–Pittsburgh: in five separate sales of assets of Ampco–Pittsburgh divisions, no termination benefits have been paid; however, in eight separate reductions in force at Ampco–Pittsburgh divisions, termination benefits were paid.

## I.

The Supreme Court's decision in *Firestone Tire & Rubber Company v. Bruch*, 489 U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), establishes that a denial of benefits under an ERISA plan challenged under 29 U.S.C. § 1132(a)(1)(B) must be reviewed *de novo* unless the benefit plan expressly gives the plan administrator or fiduciary discretion to interpret the terms of eligibility of the Plan, in which case an "arbitrary and capricious" standard is appropriate. *Id.*, at ——, 109 S.Ct. at 956, 103 L.Ed.2d at 95. If the administrator is granted discretion by the Plan and is operating under a conflict of interest, the conflict must be weighed as a factor in determining whether the administrator abused his discretion. *Id.*

█ Although the Plan now purports to give the Plan Administrator discretion to define eligibility for benefits, we apply the *de novo* standard in reviewing the denial of benefits to plaintiffs. First of all, the resolution by Greenlease in March 1988, to appoint a Plan Administrator and Appeals Administrator retroactive to January 1,

1986, cannot be used to obtain a more lenient standard of review for defendants.

Secondly, the disputed issue here concerns the construction of the term "reduction in force", a pure legal question. While a finding by a Plan Administrator that a particular layoff was intended to be permanent might be the sort of decision subject to the abuse of discretion standard, defendants' insistence that the term "reduction in force" as used in the Plan is a term of art with a single objective meaning makes short work of their argument that the Administrator's construction of that term is a discretionary task.

## II.

█ Interpreting the Plan *de novo* on this motion for summary judgment presents this question: Is there a material issue of fact regarding the meaning of the term "reduction in force"? Plaintiffs' assertion that there are disputed issues of material fact concerning the terms and conditions of plaintiffs' employment by Trinity Industries after Trinity's purchase of the Greenville plant is incorrect because the issue made relevant by the Plan in question is the reason for plaintiffs' termination from the Greenville Steel Car Company. Cf. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.") This distinguishes the Plan at issue from the case cited by plaintiffs, *Ulmer v. Harsco Corporation*, 884 F.2d 98 (3d Cir.1989). Therein, the Court of Appeals construed a plan which provided severance pay for all permanent salaried personnel "when employment is terminated." As have the Ninth Circuit and the Eleventh Circuit, the Third Circuit held that cessation of employment with an employer after a business is sold as a going concern, despite continuing employment with the new owner of the workplace, is a "termination." See *Blau v. Del Monte Corporation*, 748 F.2d 1348, 1354–55 (9th Cir.1984) (construing "elimination"); *Anderson v. Ciba–Geigy Corporation*, 759 F.2d 1518 (11th Cir.1985) cert.

denied 474 U.S. 995 (1986) (construing "terminated," but denying benefits on basis of other plan provisions.) That holding, however, settles only the half of the question which defendants do not dispute, namely, that plaintiffs were terminated.

In *Bruch v. Firestone Tire and Rubber Company*, 828 F.2d 134, 147–48 (3d Cir. 1987) aff'd in part on other grounds 489 U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Third Circuit set forth some of the factors to be used in defining the scope of a Plan. According to the Third Circuit, a reviewing court should look to industry practice in defining a plan term, to the practice within the sponsoring company itself in interpreting the plan, and to other evidence, including other terms of the plan itself, which may shed light on the meaning of an ambiguous term. Because most often the dispute arises over a term which is, as here, undefined in the plan, the Court is essentially charged with supplying a reasonable construction for the terms, taking into account the factors set forth above. Neither party has set forth any evidence of general industry practice concerning the payment of termination benefits. Reported cases chiefly review plan interpretations under the arbitrary and capricious standard, and are divided in their holdings, and therefore provide little assistance. See *Ulmer v. Harsco*, supra 884 F.2d 98, 104; *Bruch v. Firestone*, 828 F.2d 134, 146. The practice of Ampco–Pittsburgh has been, as stated above, uniform in its denial of termination pay upon sales of assets and in its grant of termination pay upon workforce downsizing layoffs, which lends support to defendants' interpretation of "reduction in force." Plaintiffs offer no evidence that the Greenville Steel Car Company Termination Allowance Plan, or any of the identical plans in effect at Ampco–Pittsburgh's other divisions, have ever been applied in a manner inconsistent with this interpretation. Further, the defendants' proffered interpretation is consistent with the common usage of the term "reduction in force," the acronym of which, "rif", has become a noun and verb in its own right, meaning permanent layoff for budgetary or economic reasons. See, e.g. Webster's New World Dictionary (3d Coll.Ed.1988), 1155 ("the act of dismissing an employee, esp. from a government job, as by *eliminating the position*") (emphasis added). Defendants' interpretation is also consistent with that intended by one of the drafters of the Plan, Robert Schultz. Plaintiffs offer no evidence which would indicate that Schultz' statement of his intent should not be believed. We conclude therefore, that the term "reduction in force" does not apply to the sale of Greenville Steel Car's business as a going concern. Accord, *Lesman v. Ransburg Corporation*, 719 F.Supp. 619 (W.D.Mich.1989).

### III.

Plaintiffs urge, as a fact precluding summary judgment, that the Greenville Plan was not filed with the Secretary of Labor, nor until 1988 was there a claims procedure established for the plan. They also argue that summary judgment cannot be granted because of disputed issues of material fact concerning which plaintiffs, if any, were aware of the January 1, 1986, revision of the plan. Plaintiffs rely on the holding of *Blau v. Del Monte*, 748 F.2d 1348 (9th Cir.1984).

In general, a procedural violation of ERISA does not give rise to a substantive remedy, and *Blau v. Del Monte's* approach has not been followed by other Circuits. See *Anderson v. Ciba–Geigy Corporation*, supra, 759 F.2d 1518, 1521; *Wolfe v. J.C. Penney Company*, 710 F.2d 388, 393 (7th Cir.1983); *Grossmuller v. International Union, UAW*, 511 F.Supp. 709, 710 (E.D. Pa.1981). Further, the lack of claims procedure and filing requirements prior to this litigation have not prejudiced the plaintiffs in any way.

The disputed issues of fact concerning the extent to which plaintiffs were made aware of the changes in the Termination Allowance Plan by the January 1, 1986 revision would be material and would preclude summary judgment even though some plaintiffs admit receiving the revisions (Uncontested Fact "H", Pretrial Stipulation), if the 1986 plan differed in its relevant provisions from those of the 1984

plan. However, eligibility for benefits only in cases of reductions in force was identical for both plan versions, and plaintiffs admit that the 1984 Plan was posted, distributed to and discussed by them. (Plaintiffs' Statement of Genuine Issues of Fact, 6). No misleading of plaintiffs as to their eligibility could have occurred therefore. Cf. *Bruch v. Firestone Tire and Rubber Company*, supra, 828 F.2d 134, 149–50 (estoppel).

### IV.

Because we hold that plaintiffs are not eligible for benefits under the Plan as a matter of law, we do not address defendants' arguments that the Plan is the only proper defendant. An appropriate order will be issued.

### ORDER

AND NOW, this 18th day of December, 1989, consistent with the foregoing, it is

ORDERED that judgment on Count II is entered in favor of defendants Greenlease Holding Company and Greenville Steel Car Company Termination Allowance Plan, and

ORDERED that judgment on Count III is entered in favor of defendant Ampco–Pittsburgh Corporation.