David SCHLEIBAUM, Sandy Schleibaum and Judith Kimmerling, Plaintiffs–Appellants,

v.

KMART CORPORATION, as Named Fiduciary of the Kmart Corporation Master Welfare Benefit Plan, Defendant–Appellee.

No. 97–2202.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 7, 1998.

Decided Aug. 25, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 18, 1998.

Geoffrey M. Grodner (argued), Mallor, Clendening, Grodner & Bohrer, Bloomington, IN, for Plaintiffs–Appellants.

Debra McVicker Lynch, Sommer & Barnard, Indianapolis, IN, Julia Turner Baumhart (argued), Kienbaum, Opperwall, Hardy & Pelton, Birmingham, MI, for Defendant–Appellee.

Before MANION, KANNE and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

The untimely death of an ERISA claimant gave rise in this case to interesting questions about the appropriate remedy for a violation of 29 U.S.C. § 1133 (failure to give adequate notice of a denial of a claim for benefits) when a remand would be futile. One of the questions we must consider is whether a plaintiff in an ERISA action has a duty to mitigate damages when an employer provides inadequate notice of a denial of plan benefits. Only one other circuit has addressed the issue of mitigation in the context of ERISA and has concluded that a plaintiff has no such duty. We affirm the district court's ruling that the employer here violated 29 U.S.C. § 1133 when it failed to give the claimant adequate notice of a denial of benefits. But we reverse the district court's holding that the only appropriate remedy was the cost of covering the insurance benefit, which, in effect, required the plaintiff to mitigate his damages.

## I.

Glen Schleibaum worked for Kmart as an Automotive Manager.[1] In November 1991, he took an approved medical leave from his job in order to undergo hip replacement surgery. Unfortunately, the operation was not successful, and approximately one week after

---

1. We will refer to Glen Schleibaum as Mr. Schleibaum or the claimant hereafter. We will refer to David Schleibaum, Sandy Schleibaum and Judith Kimmerling as the Schleibaum children or the plaintiffs.

Mr. Schleibaum was released from the hospital, in January 1992, the hip socket dislocated and he returned to the hospital for further treatment. Mr. Schleibaum never completely recovered, and was subsequently found to be disabled for the purposes of Social Security disability benefits and for the purposes of Kmart's long-term disability insurance. He also held a life insurance policy through Kmart, and Kmart's benefit plan provided that if an employee suffered from a permanent and total disability, Kmart would continue to pay the life insurance premiums until the employee turned sixty-five. At the time of his hip replacement, Mr. Schleibaum was fifty-nine.

In August 1992, Kmart's benefits administrator informed Mr. Schleibaum by letter that, after reviewing the medical evidence, he found that Mr. Schleibaum was not permanently and totally disabled and that Kmart would not, therefore, continue to pay the premiums for the life insurance policy. The letter advised that Mr. Schleibaum should "forward any additional information or medical reports which you wish to have considered as part of your appeal." The conclusory letter did not explain any specific reason for the finding that Mr. Schleibaum was not disabled nor did it detail any particular information that could be submitted to cure the defect and perfect the claim. The letter informed Mr. Schleibaum that he could convert his coverage to an individual policy if he requested conversion within 31 days of the termination of his group policy. Mr. Schleibaum's group policy coverage was due to terminate in November 1992, after the completion of one year of approved medical leave. Mr. Schleibaum responded by supplying Kmart with a copy of the Attending Physician's Statement that Kmart required him to submit for his long-term disability benefits, which Kmart had approved. On the form, his physician indicated that Mr. Schleibaum had a "Class 4" level of impairment, meaning a "moderate limitation of functional capacity; capable of clerical/administrative (sedentary) activity. (60–70%)." Apparently confused by the form, the physician also indicated that Mr. Schleibaum was "totally disabled" from his current job and "any other work." In light of this apparent conflict in the medical

evidence, Kmart again found that Mr. Schleibaum was not permanently and totally disabled, and denied his appeal. Once more, Kmart did not specify what information it required from Mr. Schleibaum to perfect his claim or why such information was necessary. Compounding the confusion was the fact that the plan did not define the term "totally and permanently disabled," and Mr. Schleibaum was apparently under the impression that if he was disabled for the purposes of Kmart's long-term disability policy and for the purposes of Social Security disability benefits, he was also disabled for the purposes of the life insurance plan.

Although Kmart did not inform Mr. Schleibaum of any continued right to appeal, he nevertheless tried again, this time including a letter from his physician stating that he would never "be able to return to active employment other than that of the most sedentary kind." Kmart responded by quoting a Rule of Administration adopted by Kmart to define the terms of the Group Term Life Insurance policy: "The term 'permanently and totally disabled' means that the employee, due to illness or injury, is not engaged in his or any other gainful occupation, and will continue to be unable, for life, to engage in *any gainful occupation* for which he is, or may reasonably become, fitted by education, training or experience." *See* Appellant's Appendix 2, at 41 (emphasis in original). Kmart also cited the language from the physician's letter, stating that Mr. Schleibaum would be unable to return to active employment other than that of the most sedentary kind, implying that he would be able to engage in some, albeit sedentary, gainful employment. Again the letter did not inform Mr. Schleibaum of any right to appeal, and did not inform him what information he could submit to perfect his claim. At this point, Mr. Schleibaum gave up.

In May 1993, approximately six months after the last volley of letters, Mr. Schleibaum suffered a cerebral hemorrhage. He remained hospitalized until his death in September 1993. Mr. Schleibaum's policy, which would have been worth approximately $260,000 had it been in effect at the time of his death, named his adult children as beneficia-

ries. The Schleibaum children attempted to recover the benefits they believed were due under the policy whereupon Kmart informed them that it had not maintained the policy in light of its finding that Mr. Schleibaum was not totally and permanently disabled. The Schleibaum children then brought an action in federal court pursuant to ERISA. The action focused on Kmart's failure to give adequate notice of the reasons for denying coverage and its failure to inform Mr. Schleibaum of information necessary to make a meaningful appeal. As a result, the Schleibaum children argued, their father was wrongfully denied life insurance coverage, and they sought an award of the face value of the policy.

The district court found that Kmart had indeed violated 29 U.S.C. § 1133, the ERISA provision that requires the plan administrator to provide adequate notice to a plan participant whose claim for benefits has been denied. That section requires the administrator to set "forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(a). The provision also requires administrators to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(b). The district court found that Kmart failed on both counts by providing Mr. Schleibaum with only a cursory form letter that failed to detail the reasons for the denial or the specific materials the claimant could submit to perfect his claim. The district court also found, however, that although the notices were inadequate, Kmart did clearly inform Mr. Schleibaum that it intended to terminate his insurance coverage. The district court found, therefore, that the appropriate remedy was not the face value of the insurance policy, as the Schleibaum children requested, but rather the amount Mr. Schleibaum would have paid in premiums for an individual conversion policy available to him under Kmart's plan. Because the Schleibaum children presented no evidence regarding the amount of those premiums, the court found that they failed to prove the

amount of damages and awarded them nothing. The Schleibaum children appealed.

## II.

■ Kmart raises a weak challenge to the district court's finding that Kmart violated § 1133 of ERISA. The company admits it did not strictly comply with the statute but argues that it substantially complied by eventually providing all of the required information in a series of letters. *See Donato v. Metropolitan Life Ins. Co.*, 19 F.3d 375, 382 (7th Cir.1994) (substantial compliance with ERISA regulations is sometimes sufficient to overcome procedural defects); *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 693–94 (7th Cir.1992) (substantial compliance with ERISA regulations is sufficient, so long as the notice given provides the plan participant and the courts a sufficiently precise understanding of the ground for denial to permit a realistic opportunity for review). Although Kmart did eventually imply that the reason for the denial of benefits was Mr. Schleibaum's residual capacity to perform some sedentary work, Kmart never told Mr. Schleibaum what medical information to submit to perfect his claim.

■ Most importantly, Kmart did not impart this critical information to the claimant at a time when he could have still done something about it. In the second and third letters, Kmart merely informed Mr. Schleibaum that it was denying his claim, and did not inform him, as the company had in the first letter, that he had a right to appeal. As a result, Mr. Schleibaum gave up his appeal and failed to gather the additional information that could have helped him perfect his claim. As the district court aptly pointed out, the ERISA claims process is not designed to be an endurance contest, where an employee must continue to appeal, without knowing what information the employer requires or whether the employer will even consider the appeal. *Schleibaum v. Kmart Corp.*, No. IP95–284–C H/G, slip op. at 18 (S,D.Ind. Feb. 12, 1997). Under *Donato* and *Halpin*, the plan participant must have all the necessary information at a time when the participant still has a meaningful opportunity for appeal and for full and fair review. *Do-*

*nato,* 19 F.3d at 382; *Halpin,* 962 F.2d at 697. Kmart fell far short of meeting the standard for substantial compliance and we thus affirm that portion of the district court's ruling.[2]

### III.

The appropriate remedy for Kmart's violation of § 1133 is a much more difficult issue. The district court found that because of Mr. Schleibaum's death, it was impossible to determine whether he was in fact permanently and totally disabled, pursuant to the plan's definition of those terms, in the fall of 1992. *Schleibaum,* slip op. at 21. Mr. Schleibaum's medical condition at that time could no longer be assessed with any degree of certainty, and the court had no way to assess his employability, the standard that Kmart applies in determining disability for this purpose. *Id.,* slip op. at 21–22. The district court also found that Kmart was responsible for this lack of information, having failed in its letters to Mr. Schleibaum to request the information it required to make the proper assessment. *Id.,* slip op. at 21. Because Mr. Schleibaum suffered from other serious medical conditions in addition to the failed hip replacement, this information could well have resulted in a finding of disability by Kmart's administrator.[3] The physician who evaluated Mr. Schleibaum considered only his hip problem in concluding that the claimant would not be able to perform anything other than the most sedentary work. That physician has since testified in his deposition that he cannot now form an opinion as to whether Mr. Schleibaum was permanently and totally disabled according to Kmart's definition as of

fall 1992. Kmart's benefits administrator was also unaware of these additional medical conditions at the time he denied benefits.

Had the administrator provided specific reasons for the denial, Mr. Schleibaum might have been able to obtain an assessment that accounted for his complete medical status and included an analysis of his capacity to engage in gainful employment. The court opined that the problem was one of burden of proof. The beneficiaries of the employee could not prove that he was disabled and the plan administrator could not prove that he was not. The court assumed that the burden of proof regarding Mr. Schleibaum's condition should fall on Kmart. The court also assumed, *arguendo,* that it had the power to determine *de novo* Mr. Schleibaum's eligibility for benefits rather than remanding to the plan administrator for that determination.

Having made those assumptions, however, the court declined to award the Schleibaum children the face value of the policy, holding that, although the notice provided was faulty, Kmart did inform Mr. Schleibaum that he would not be covered and that he could purchase a conversion policy. The district court found that purchasing the conversion policy was a "reasonable and practical" alternative for Mr. Schleibaum, and that he could afford to pay for it with his disability income from Social Security and Kmart's long-term disability plan, as well as his retirement savings account. The court found that the lapse in coverage was Mr. Schleibaum's own choice, and the maximum amount recoverable by his beneficiaries was the cost of the premiums for the conversion policy. Because the Schleibaum children failed to put on any

---

**2.** Contrary to our dissenting colleague's claim, the plaintiffs clearly convinced the district court that Kmart's denial letters were to blame. The district court held that "[i]n denying Mr. Schleibaum the continued life insurance premium coverage based on disability, Kmart violated his rights to meaningful notice under ERISA." *Schleibaum,* slip op. at 14. The court also found that the "denial letter was about as conclusory as could be imagined," and that because of the inadequacies in the letters, Mr. Schleibaum did not understand the basis for Kmart's denial of his claim. *Id.,* slip op. at 16.

**3.** In addition to the failed hip replacement, the record reveals that Mr. Schleibaum suffered

from a heart condition for which he had undergone an angioplasty in 1988, that he was obese, and that he had a problem with blood clots that required him to take blood thinners on a regular basis. In 1991, Mr. Schleibaum collapsed at work due to a blood clot in his neck, an incident which required hospitalization for treatment. The district court also noted that Mr. Schleibaum continued to have "substantial limits on his stamina" several months after the hip replacement surgery, and remarked that limited stamina can "easily make the difference as to whether a person is able to engage in gainful employment." *Schleibaum,* slip op. at 22.

evidence regarding the amount of those premiums, the court held that they failed in their proof of the amount of damages, and the court entered judgment for Kmart.

### A.

■ As the district court noted, the damages issue here is complex. But we do not agree that the appropriate measure of damages was the amount of the premiums for the conversion policy. Nor do we agree that the plaintiffs are at fault for a failure of proof on this amount. We will begin by addressing an evidentiary problem in the court's analysis. Although the district court found that there was no evidence regarding the cost of a conversion policy, the court ruled that paying for such a policy was a "reasonable and practical" alternative for Mr. Schleibaum. The court based this finding on the fact that Mr. Schleibaum was receiving a little more than $3000 per month in disability payments, and the fact that he had approximately $50,000 in a retirement savings account with his former employer. We are perplexed by the district court's finding that Mr. Schleibaum could pay for premiums when it also found that there was no evidence in the record regarding how much the conversion policy would have cost. We suspect that life insurance premiums for a fifty-nine-year-old man who suffered from a failed hip replacement, obesity, a heart condition and a blood clot disorder would not have been insignificant. Moreover, even if the court knew the cost of the premiums, it had no information regarding Mr. Schleibaum's monthly expenses, and no evidence that Mr. Schleibaum had access, at age fifty-nine, to his retirement account. With no support in the record for the amount for the premiums or Mr. Schleibaum's ability to pay, the district court's finding that the conversion policy was a "practical and reasonable alternative" for Mr. Schleibaum was in error. *See Hamilton v. Mecca, Inc.*, 930

F.Supp. 1540, 1555 (S.D.Ga.1996) (rejecting defendant's theory that plaintiff should have mitigated ERISA damages by maintaining conversion policy).

■ A more fundamental problem with the district court's holding is that mitigation of damages is generally an affirmative defense for which the defendant bears the burden of proof. *See e.g. Fleming v. County of Kane, State of Illinois*, 898 F.2d 553, 560 (7th Cir.1990) (in employment discrimination cases, once plaintiff has established lost wages, the burden shifts to defendant to prove as an affirmative defense that plaintiff failed to mitigate those damages). Having proved their theory of damages, i.e., the face value of the policy, the Schleibaum children had met their burden. The burden then shifted to the defendant to show that Mr. Schleibaum could have mitigated his damages. Kmart should have borne the burden of proof on the amount of the conversion premiums and whether Mr. Schleibaum could have afforded them given his income and expenses. Instead, the court faulted the Schleibaum children for not putting on evidence regarding the amount of the premiums, hypothesizing that the children did not bother to put on premium evidence because they "understandably have had little interest in pursuing this case to obtain the meager benefits of a few months' worth of life insurance premiums." *Schleibaum*, slip op. at 25. The court thus erred by placing the burden of proof on mitigation on the plaintiffs: *See Hamilton*, 930 F.Supp. at 1554.[4]

■ Whether plaintiffs are even required to mitigate their damages in the ERISA context is not a settled matter of law. Very few courts have addressed mitigation of damages in the context of ERISA. Neither party cites a case directly on point. We were able to find only one federal circuit that addressed this issue, albeit in a slightly dif-

---

4. In *Hamilton*, the employer failed to provide the employee with notice of his right to continuation of coverage under COBRA, and as a result, the employee incurred un-reimbursed medical expenses. 930 F.Supp. at 1554. The court there noted that in order to maintain a conversion policy, the employee would be required to pay significantly higher monthly premiums at a time when he could ill afford additional expenses, as

was likely the case with Mr. Schleibaum. The court held that the plaintiff was not obliged to undertake such a burden in order to mitigate his damages. *Id.*, 930 F.Supp. at 1555. In the instant case, the district court speculated that Mr. Schleibaum could have afforded the expense of a conversion policy. Because the burden of proof rested on the defendant on this point, that ruling was in error.

ferent context. In *Moothart v. Bell*, 21 F.3d 1499 (10th Cir.1994), a plan administrator refused to provide a copy of the plan summary to an employee despite repeated requests. The employee sued under § 1132(c), which provides for a penalty for each day that passes after the date of the failure or refusal to provide a plan participant with a copy of the plan. The district court imposed a penalty that covered the period of time between the first request for a copy of the plan summary and the date of trial, when the defendant finally produced the requested document. The defendants complained on appeal that the district court failed to consider and apply the doctrine of mitigation of damages. The Tenth Circuit rejected that argument outright:

> First, we emphasize that the penalty statute is just that, a penalty. Therefore, mitigation of damages would not apply. *See Daughtrey [v. Honeywell, Inc.,]* 3 F.3d [1488,] 1494 [(11th Cir.1993)] ("section 1132(c) is intended to punish noncompliance with the employer or administrator's disclosure obligations and not to compensate the participant"). The focus is necessarily on the plan administrator's actions, not the participant's.

*Moothart*, 21 F.3d at 1506–07.[5] Of course, we are not dealing with the penalty statute here. Kmart's obligation to provide adequate notice of the specific reasons for denial of a benefit arose under § 1133, and the Schleibaum children sued under § 1132(a) to recover benefits due under the plan. The statutory penalty under § 1132(c) applies only when an administrator refuses to supply information that the administrator is obliged to provide under ERISA. *See Dade v. Sherwin–Williams Co.*, 128 F.3d 1135, 1143 (7th Cir.1997) (statutory penalty imposed pursuant to § 1132(c) not available for violations of § 1133); *VanderKlok v. Provident Life and Accident Ins. Co., Inc.*, 956 F.2d 610, 617–18 (6th Cir.1992) (same).[6]

But as with the statutory penalty, the focus of § 1133 is on the plan's actions, and not on the plan participant. Thus, the rationale applied in § 1132(c) actions to reject the defense of mitigation is also applicable to § 1133. Requiring mitigation, in this instance, also seems inconsistent with the primary purpose of ERISA, which is to protect the interests of plan beneficiaries. *Leigh v. Engle*, 727 F.2d 113, 139 (7th Cir.1984). *See also Buckley Dement, Inc. v. Travelers Plan Administrators of Illinois, Inc.*, 39 F.3d 784, 789 (7th Cir.1994) (" 'ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries' in pension and welfare benefit plans." (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983))). When the wrongful act of the employer is a failure to provide information that is solely within the employer's control, employees would be hard pressed to "mitigate" in the traditional sense by seeking out the information themselves.

Here, the court went a step further and faulted the employee for failing to cover his potential losses by purchasing a conversion policy at a time when the employee had not yet realized that the plan administrator had breached its duties. Requiring mitigation by a plan participant might, in fact, serve as a disincentive to plan administrators to comply with the procedural requirements of ERISA. This case provides a perfect illustration of the problem. If the claimant is required to mitigate, then the claimant is required to pay for coverage while appealing the denial of benefits. The claimant must do so even

---

5. *See also Iron Workers' Local No. 25 Pension Fund v. Klassic Services, Inc.*, 913 F.Supp. 541 (E.D.Mich.1996) (in an ERISA action to collect delinquent fringe benefits, duty to mitigate did not apply when defendant did not allege how plaintiff could have avoided accumulation of damages).

6. Section 1133 defines the obligation of the plan to provide adequate notice to a plan participant of the reasons for a denial of benefits, and to also provide a reasonable opportunity for a full and fair review of a decision denying benefits. Section 1132(c) sets a penalty for a failure of a *plan administrator* to supply requested information, such as a copy of the plan. Although both sections address a failure to provide information, the obligation to provide the information applies to different entities, the remedies differ, and the likely harm to the plan participant also differs. The common element that is relevant here is that both sections focus on the actions not of the plan participant but rather on the actions of the plan and its administrator.

though the claimant may not realize that the administrator has provided inadequate notice, and may not even realize he or she has a reason or a right to appeal. If found liable after the appeal, the administrator will be forced to reimburse the claimant for the cost of coverage, which is all the administrator would have had to pay in the first place. We do not see how such a requirement would promote the interests of employees in benefit plans.

## B.

■ So what is the appropriate measure of damages in this case? Normally, in an action for an inadequate denial letter, the remedy is to remand the case to the administrator for a full and fair hearing of the claim, and that is the remedy that Kmart urges us to grant if we are inclined to grant any remedy at all. *See Wolfe v. J.C. Penney Co., Inc.*, 710 F.2d 388, 393 (7th Cir.1983). Kmart relies on *Wolfe*, where the plan administrator denied the plaintiff's claim for long-term disability benefits. We held there that the letter denying benefits did not pass muster under § 1133 because it was conclusory, and contained only a blanket request for further "medical information." *Id.*, 710 F.2d at 392–93. We characterized the plan administrator's error as procedural in nature. The record in the district court suggested that if the plaintiff had received adequate notice, he would have been able to supplement the record and would have been able to seek full and fair review of his claim. We held, therefore, that although the plaintiff was not entitled to a substantive remedy for this procedural violation, he was entitled to a remand to the plan fiduciary for a new determination of his claim. *Id.*, 710 F.2d at 393. *See also Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997) (the remedy when a plan administrator fails to make adequate findings or to explain its grounds adequately is to send the case back to the administrator for further findings or explanation; this is the appropriate remedy in an ERISA action unless the case is so clear-cut that it would be unreasonable for the administrator to deny the application for benefits on any ground). No remand is necessary, of course, where it would be a useless formality. *Wolfe*, 710 F.2d at 394. Finally, we held that if the plaintiff prevailed in the hearing before the plan fiduciary, he was entitled to retroactive benefits. *Id.*

Kmart urges that *Wolfe* is controlling here, and that under *Wolfe*, the only remedy available is remand to the plan fiduciary to hear the claim again. Kmart attempts to distinguish *Halpin v. W.W. Grainger*, 962 F.2d 685 (7th Cir.1992), where we held that in some cases, reinstatement in the plan rather than remand for a hearing, was the appropriate remedy when the administrator issued an inadequate letter denying benefits. Halpin's plan administrator terminated his disability benefits, having previously found that he was eligible. We affirmed the district court's judgment that the letter terminating the benefits did not comply with § 1133. We also held that the district court did not abuse its discretion by ordering reinstatement of benefits instead of a remand for a hearing before the fiduciary. *Halpin*, 962 F.2d at 697. A remand was not necessary in that case because the administrator had previously determined that the claimant was eligible for benefits, and because the claimant did not have additional evidence to present on the merits of the claim. We explained that when additional evidence on the merits is presented for the first time to the district court, the court should remand to the fiduciary to make an initial assessment of whether the additional facts establish eligibility. *Id.*

The district court in the instant case found that Mr. Schleibaum's claim fell in between *Wolfe* and *Halpin*. We agree with the district court that a remand was not required under *Wolfe* because a remand would be futile. *Wolfe*, 710 F.2d at 393 (remand not required where it would be a useless formality). The Schleibaum children could no longer gather evidence about their father's medical condition and employability because of his untimely death. In fact, the district court remarked that Kmart had made clear "that it could not determine that Mr. Schleibaum was eligible for benefits without seeing new evidence of a type that plaintiffs cannot possibly find or produce." *Schleibaum*, slip op. at 23. But reinstatement under *Halpin* was not

necessarily appropriate because Mr. Schleibaum had never been adjudged eligible for continuation of his life insurance benefits in the first place. It was this quandary that led the district court to hold that the appropriate measure of damages was the cost of conversion policy premiums. As we noted above, this holding was in error because it required the plaintiff to mitigate his damages when, among other things, the defendant failed to prove that the claimant could have mitigated the damages.

■ The puzzle here is that if Mr. Schleibaum was entitled to a continuation of his life insurance, then the appropriate remedy would be the face value of the policy. *See* 29 U.S.C. § 1132(a)(1)(B) (a plan participant may bring an action to recover benefits due to him or her under the terms of the plan); *Wolfe*, 710 F.2d at 394 (plaintiff is entitled to retroactive benefits if he or she prevails on remand in a § 1133 claim); *Hamilton*, 930 F.Supp. at 1547 (appropriate remedy for administrator's failure to provide plaintiff adequate notice of his right to continued coverage under COBRA is the total amount of medical expenses that were not reimbursed as a result of defendant's failure). If he was not entitled to continuation of the life insurance, then his beneficiaries are not entitled to a substantive remedy. *See Wolfe*, 710 F.2d at 393 (plaintiff not entitled to a substantive remedy based on defendant's procedural ERISA violation); *Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 807 (6th Cir.1996) (generally, procedural violations in ERISA do not give rise to substantive remedies); *Parker v. BankAmerica Corp.*, 50 F.3d 757, 768 (9th Cir.1995) (ordinarily, a plaintiff who suffers because of a fiduciary's failure to comply with ERISA's procedural requirements is entitled to no substantive remedy). But we do not know, and agree with the district court that we cannot now determine whether Mr. Schleibaum was in fact totally and permanently disabled and therefore entitled to continuation of the policy. We do

know that Mr. Schleibaum had a non-trivial claim for continuation of his life insurance coverage. He had already been adjudged disabled for the purpose of Social Security disability benefits and for the purpose of Kmart's long-term disability program.[7] In that sense, his situation was closer to *Halpin* than to *Wolfe*. That there are gaps in the information regarding his employability and medical condition is largely due to Kmart's failure to inform Mr. Schleibaum about the information he needed to perfect his claim, combined with Mr. Schleibaum's untimely death. The district court must therefore exercise its equitable powers in fashioning an appropriate measure of damages. *See Parker*, 50 F.3d at 769 (plaintiff entitled to recover benefits when he or she can show that a procedural ERISA violation caused a substantive harm); *Kent*, 96 F.3d at 807 (in ERISA cases, procedural violations entail substantive remedies when some useful purpose would be served). In determining the amount to award, the court should consider the likelihood that Mr. Schleibaum had a legitimate claim and would have been covered but for the fact that Kmart provided inadequate notice of the denial of the claim. The court should also consider the degree of fault to be assigned to Kmart for its failure to properly inform Mr. Schleibaum about how to perfect his claim in time for him to do so. Finally, the court should consider that Kmart's error was procedural in nature, but may have led to a substantive harm. This is a difficult calculus to apply in hindsight, given that we now know Mr. Schleibaum's health problems were serious enough to result in his death shortly after Kmart denied his claim. But deciding what is fair is the kind of assessment district courts must make every day. We are confident that the district court here, having tried the case, is in the best position to make that equitable assessment.

On one final note, plaintiffs also appealed the district court's denial of attorney's fees

---

7. Given the findings of the Social Security Administration and the long-term disability insurance carrier, as well as the record evidence of Mr. Schleibaum's myriad medical problems, we are puzzled by the dissent's claim that "the evidence suggests that the problem was Schleibaum's medical substantiation, not his misunderstanding of the documentation Kmart required." *See infra* at 505. This statement is also contrary to the district court's finding regarding what Mr. Schleibaum understood about Kmart's requirements. *See* Note 2, *supra*.

and costs. The district court found that plaintiffs were not entitled to fees and costs in view of their "lack of ultimate success on the merits." *Schleibaum,* slip op. at 25. In light of our ruling today, we direct the district court to reconsider the issue of fees and costs. *See* 29 U.S.C. § 1132(g)(1); *Filipowicz v. American Stores Benefit Plans Committee,* 56 F.3d 807, 816 (7th Cir.1995) (setting forth the factors a court should consider in determining whether to award attorney's fees in an ERISA action). Costs on appeal are awarded in favor of the plaintiffs.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

MANION, Circuit Judge, dissenting.

I respectfully dissent from the court's decision to remand this case to the district court. After one trial it is doubtful further proceedings will enlighten the district court on how to enhance a judgment this court believes could be more "fair" and "equitable." Equity does not necessarily include forcing an employer to pay on a $260,000 life insurance policy (or some portion thereof) to the adult children of a deceased worker, Glen Schleibaum, simply because the company may have mailed cursory letters denying his claim of "total disability." In fact, as the court concedes, Kmart's very first letter to Schleibaum notified him of his right to appeal and subsequent letters explained that Kmart did not view him as disabled because he could perform some kinds of work if not all kinds. We need not decide whether Kmart's series of letters "substantially complied" with the Act, thus satisfying all of its obligations under ERISA. Even if Kmart's communications fell short of statutory technicalities, the plaintiffs' case fails to establish the basic element of causation-here, that Kmart's letters (rather than other circumstances) prevented their father from securing company-sponsored life insurance for their benefit before he died.

Consider the possibilities, already adjudicated before the district court. Faced with the prospect of continuing his life insurance through an individual policy (and the monthly premiums that he would have to personally pay), Schleibaum might well have decided that the costs exceeded the benefits; his children, after all, were fully grown. He may

well have decided that he could better use his money for immediate needs or desires for himself or others rather than pouring it into life insurance. In that case, he might have made a conscious decision not to continue the life insurance while at the same time pursuing the chance that the company might reconsider its decision that he was not "permanently and totally disabled."

But giving the adult children the benefit of all doubts, suppose their father decided against the individual policy because neither he nor his children could afford it, but still wanted to provide for them after his death. In that case his only chance to obtain coverage was to convince Kmart that—despite the evidence to the contrary (his doctor's letter stating he could perform sedentary work)— he was indeed permanently and totally disabled under the terms of the plan. He died before he could convince Kmart of this. The court focuses on Kmart's letters rather than the lack of medical documentation supporting Schleibaum's claim. We will never know whether more complete communication between Kmart and Schleibaum would have resulted in Kmart accepting his claim of disability (the evidence suggests that the problem was Schleibaum's medical substantiation, not his misunderstanding of the documentation Kmart required).

Rather than rooting its opinion in arguable notions of what "equity" demands, the court should stick close to the law. Everyone involved with this case concedes that at most Kmart violated § 1133 of the Act, meaning it violated the technical notice requirements outlined by Congress. Nowhere does the court acknowledge that in these cases "[w]e have repeatedly held that technical violations of ERISA's notification requirements, without a showing of bad faith, active concealment or detrimental reliance, do not state a cause of action." *Andersen v. Chrysler Corp.,* 99 F.3d 846, 859 (7th Cir.1996) (citations omitted). The plaintiffs do not contend that Kmart is guilty of bad faith or active concealment of any material information, and nothing uncovered during the trial suggested it. That leaves the plaintiffs' last chance to recover under their father's life insurance policy—they must prove that Kmart falsely summarized the plan and induced their father to rely on those representations. But

the plaintiffs did not pursue this theory in the district court, and in all events the record evidence establishes that while Kmart's letters were somewhat cursory, they were not misleading in any way. In fact, Schleibaum's own letters reveal his understanding that his claim had been rejected because the company did not view him as disabled under the terms of the plan.

The court concedes that we will never know whether Mr. Schleibaum was in fact permanently and totally disabled and entitled to a continuation of his policy. We will never know whether more complete notices mailed by Kmart would have prompted Schleibaum to provide more convincing medical evidence, or whether he shared everything he had with Kmart before he died. We will never know why he decided not to continue his life insurance by converting to an individual policy, whether he intended his adult children to benefit from a policy, or whether he pursued his disability claim only because he had nothing to lose. After taking much evidence, we still do not know much; a remand will not cast new light on the same facts. We are not deciding whether there is a genuine issue about these things; the plaintiffs already had their day in court and failed to convince the district court that the letters were to blame. Fairly, equitably, and most important, legally, that failure should put an end to their case. For these reasons, I dissent.